<table>
<tr><td>

DISTRICT COURT, ARAPAHOE COUNTY
STATE OF COLORADO

7325 South Potomac Street
Centennial, Colorado   80112
Telephone:  (303) 649-6355

---

**Plaintiffs:**

ELIZABETH S. WEAVER and JOHN D. PAPILION

v.

**Defendants:**

ERIC M. DALE; DIANE M. DALE; WELLS FARGO
BANK, NATIONAL ASSOCIATION f/k/a WELLS
FARGO BANK WEST, N.A., a national banking
association; CYNTHIA D. MARES in her official
capacity as Public Trustee of Arapahoe County,
Colorado

---

ATTORNEYS FOR PLAINTIFFS:
    Kenneth K. Skogg, #17053
    Karen L. Brody, #27215
    Lowe, Fell & Skogg, LLC
    1099 Eighteenth Street, Suite 2950
    Denver, Colorado  80202
Phone Number:    (720) 359-8200
FAX Number:    (720) 359-8201
E-mail:    kskogg@lfs.law.com
    kbrody@lfslaw.com

</td><td>

DATE FILED: August 8, 2013 2:29 PM

▲ **COURT USE ONLY** ▲

---

Case Number:

Div.

</td></tr>
</table>

**COMPLAINT**

      Elizabeth S. Weaver and John D. Papilion, through their counsel, Lowe, Fell &
Skogg, LLC, for their Complaint, state and allege as follows:

## PARTIES

1.      Plaintiffs Elizabeth S. Weaver ("Weaver") and John D. Papilion ("Papilion") reside at 5700 South Cherry Circle, Greenwood Village, Colorado 80121.

2.      Upon information and belief Defendants Eric M. Dale and Diane M. Dale (collectively, the "Dales") reside at 5436 North Lake Drive, Milwaukee, Wisconsin 53217.

3.      Upon information and belief Defendant Wells Fargo Bank West, N.A., n/k/a Wells Fargo Bank, National Association ("Wells Fargo Bank"), is a foreign corporation in good standing with a principal place of business located at 101 N. Phillips Avenue, Sioux Falls, South Dakota 57104.

4.      Defendant Cynthia D. Mares ("Mares") is named in her official capacity as the Public Trustee of Arapahoe County, Colorado.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to C.R.C.P. 105.

6.      The Court has personal jurisdiction over the Dales pursuant to C.R.S. § 13-1-124 because this action arises from the ownership of real property located in Colorado.

7.      The Court has personal jurisdiction over Defendant Wells Fargo Bank pursuant to C.R.S. § 13-1-124 because Wells Fargo Bank transacts business within the state of Colorado.

8.      The Court has personal jurisdiction over Defendant Mares because she is a public official in, and resident of, the State of Colorado.

9.      Venue is proper in Arapahoe County, Colorado under Rule 98(a), C.R.C.P. because the property that is the subject of this action is located in Arapahoe County.

## GENERAL ALLEGATIONS

10.      On or about March 20, 2001, the Dales purchased certain real property legally described as Lot 13, Block 2, the Preserve at Greenwood Village Filing No. 4, County of Arapahoe, State of Colorado, with an address of 5700 South Cherry Circle, Greenwood Village, Colorado 80121 (the "Property").

11.      The Dales acquired the Property by Warranty Deed dated March 20, 2001 and recorded on March 23, 2001 at Reception No. B1042309 with the Clerk and Recorder, Arapahoe County, Colorado.

12.      Upon information and belief, the Dales purchased the Property with a purchase money loan obtained through Wells Fargo Bank on or about March 23, 2001.

13.     On or about February 1, 2002, the Dales refinanced the loan that they had obtained to purchase the Property with a Home Equity Line of Credit obtained through Wells Fargo Bank in the amount of $1,000,000.00 (the "2002 HELOC").

14.     The Dales secured the 2002 HELOC with a Deed of Trust on the Property dated January 29, 2002 and recorded on February 11, 2002 at Reception No. B2027666 with the Clerk and Recorder, Arapahoe County, Colorado, a true and correct copy of which is attached as Exhibit A and incorporated into this Complaint by reference (the "2002 Wells Fargo Deed of Trust").

15.     Defendant Wells Fargo Bank is the beneficiary of the 2002 Wells Fargo Deed of Trust and identified as the Lender.

16.     The Public Trustee for Arapahoe County is identified as the Trustee under the 2002 Wells Fargo Deed of Trust and was granted the power of sale with respect to the Property in the event that the Dales failed to perform their obligations under the 2002 Wells Fargo Deed of Trust.

17.     On or about August 9, 2002, the Dales again refinanced the loan that they had on the Property with a new loan obtained from Merrill Lynch Credit Corporation in the amount of $1,000,000.00 (the "2002 Refinance").

18.     Land Title Guarantee Company served as the closing agent for the Dales' 2002 Refinance.

19.     As part of the 2002 Refinance transaction, the 2002 HELOC was to be paid in full and the 2002 Wells Fargo Deed of Trust was to be released.

20.     As of August 9, 2002, the outstanding balance of the 2002 HELOC was $999,955.60 (the "2002 HELOC Balance").

21.     Land Title Guarantee Company was to provide a check in the amount of the 2002 HELOC Balance to Wells Fargo Bank as part of the 2002 Refinance transaction.

22.     As part of the 2002 Refinance, Wells Fargo Bank was to close the 2002 HELOC.

23.     Upon receipt of payoff funds from Land Title of the 2002 HELOC Balance in the 2002 Refinance, Wells Fargo Bank was to release the 2002 Wells Fargo Deed of Trust by executing a Request for Release of Deed of Trust, and returning the original 2002 Wells Fargo Deed of Trust to Land Title Guarantee Company for recording in the Arapahoe County real property records.

24.     Wells Fargo Bank accepted payment of the 2002 HELOC Balance as part of the 2002 Refinance, but failed to close the 2002 HELOC and further failed to execute a Request for Release of Deed of Trust.

25.     As a result of Wells Fargo Bank's failure to execute the Request for Release of Deed of Trust as required under the 2002 Refinance transaction, the 2002 Wells Fargo Deed of Trust remained, and continues to remain today, as a lien against the Property.

26.     Upon information and belief, commencing in or about October 2002, the Dales obtained funds from the 2002 HELOC in the approximate amount of $998,000.00.

27.     On or about July 8, 2005, the Dales conveyed the Property to Ann C. Baer ("Baer") by Warranty Deed recorded on July 8, 2005 at Reception No. B5102370 with the Clerk and Recorder, Arapahoe County, Colorado.

28.     On or about January 25, 2013, Baer conveyed the Property to Papilion and Weaver by Warranty Deed recorded on January 25, 2013 at Reception No. D3010219 with the Clerk and Recorder, Arapahoe County, Colorado.

29.     Papilion and Weaver financed the purchase of the Property with a loan from FirstBank and secured the loan with a Deed of Trust on the Property, with FirstBank as the beneficiary, dated January 24, 2013 and recorded on January 25, 2013 at Reception No. D3010220 with the Clerk and Recorder, Arapahoe County, Colorado (the "FirstBank Deed of Trust").

30.     The FirstBank Deed of Trust was intended to be a first position lien on the Property.

31.     On or about July 31, 2013, Baer executed a Quitclaim Deed recorded at Reception No. D3097395 on August 1, 2013 with the Clerk and Recorder, Arapahoe County, Colorado, remising, releasing, selling and quitclaiming to Papilion and Weaver all of the right, title, interest, claim and demand that she had in the Property

32.     Upon information and belief, the 2002 HELOC is in default.

33.     Although Wells Fargo Bank accepted payment of the 2002 HELOC Balance and agreed to release the 2002 Deed of Trust, by letter dated February 19, 2013, Wells Fargo Bank demanded payment of the current balance of the 2002 HELOC from Papilion and Weaver and threatened to commence foreclosure proceedings against the Property.

**FIRST CLAIM FOR RELIEF**
**(QUIET TITLE UNDER C.R.C.P. 105 AGAINST ALL DEFENDANTS)**

34.     Papilion and Weaver reassert and incorporate all prior allegations.

35.     Pursuant to C.R.C.P. 105 an action may be brought for the purpose of obtaining a complete adjudication of the rights of all parties with respect to any real property and for damages, if any, for the withholding of possession.

36.     The Defendants may claim some right, title, or interest in and to the Property adverse to Papilion and Weaver.

37.     The claims to, and interest in, the Property, claimed by each of the Defendants listed in this Complaint, are subordinate to the interests of Papilion and Weaver in the Property, or are otherwise without foundation or right.

38.     Papilion and Weaver are entitled to a decree under C.R.C.P. 105 that Wells Fargo Bank is required to execute all documents necessary to release the 2002 Wells Fargo Deed of Trust and finding that Papilion and Weaver own fee title to the Property, that the FirstBank Deed of Trust granted by Papilion and Weaver is a first position lien on the Property and that the rights of the Defendants are without foundation.

39.     Papilion and Weaver have suffered damages in an amount to be proven at trial in enforcing their rights under C.R.C.P. 105.

## SECOND CLAIM FOR RELIEF
## (VIOLATION OF C.R.S. § 38-35-124 AGAINST WELLS FARGO BANK)

40.     Papilion and Weaver reassert and incorporate all prior allegations.

41.     C.R.S. § 38-35-124 requires that upon satisfaction of indebtedness secured by a lien on real property, the creditor or holder of the indebtedness shall, within ninety days after the satisfaction of the indebtedness record with the appropriate clerk and recorder the documents necessary to release or satisfy the lien of record, or, in the case of an indebtedness secured by a deed of trust to a public trustee, file with the public trustee the documents required for a release as prescribed by C.R.S. § 38-39-102.

42.     C.R.S. § 38-35-124 provides that any creditor or holder who fails to comply with this statute shall be liable to the owner of the real property encumbered by such indebtedness and to any other person liable on such indebtedness for all actual economic loss incurred in enforcing the rights provided under the statute, including reasonable attorney fees and costs.

43.     Wells Fargo Bank received and accepted full satisfaction of the 2002 HELOC as part of the 2002 Refinance transaction.

44.     Pursuant to C.R.S. § 38-35-124, Wells Fargo Bank was required to execute the documents necessary to release the 2002 Wells Fargo Deed of Trust and provide such documents to Land Title Guarantee Company.

45.     Wells Fargo Bank failed to execute the documents required to release the 2002 Wells Fargo Deed of Trust in accordance with C.R.S. § 38-35-124.

46.     As a direct result of Wells Fargo Bank's failure to comply with C.R.S. §38-35-124, Papilion and Weaver have suffered economic loss in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
## (SLANDER OF TITLE UNDER C.R.S. § 38-35-109 AGAINST WELLS FARGO BANK)

47.     Papilion and Weaver reassert and incorporate all prior allegations.

48.     Pursuant to C.R.S. § 38-35-109, any person purportedly benefited by a recorded document that purports to convey, encumber, create a lien against, or otherwise affect the title to real property and is otherwise invalid who willfully refuses to release such document of record upon request of the owner of the real property affected shall be liable to such owner for the sum of not less than one thousand dollars or actual damages caused as a result, whichever is greater, together with reasonable attorney fees.

49.     Papilion and Weaver have requested that Wells Fargo Bank execute the documents necessary to release the 2002 Wells Fargo Deed of Trust; however, Wells Fargo Bank refuses to do so constituting a violation of C.R.S. §38-35-109(3).

50.     Papilion and Weaver have suffered damages in an amount to be proven at trial as a direct and proximate result of Wells Fargo Bank's violation of C.R.S. § 38-35-109(3).

## PRAYER FOR RELIEF

WHEREFORE, Papilion and Weaver request the following relief:

A.     For a judgment on the First Claim for Relief in favor of Papilion and Weaver and against Defendants that includes a decree:

a.     Requiring the Defendants to set forth the nature of their claims;

b.     Ordering Wells Fargo Bank to execute the documents necessary to release the 2002 Wells Fargo Deed of Trust;

c.     Determining that the Defendants and each of them have no interest, estate, or claim of any kind whatsoever in the Property;

d.     Quieting the title of Papilion and Weaver in and to the Property and adjudging that Papilion and Weaver own the Property in fee;

e.     Adjudging that FirstBank holds a first position lien on the Property through the FirstBank Deed of Trust; and

f.     Awarding damages in an amount to be proven at trial in favor of Plaintiffs as a result of enforcing their rights under C.R.C.P. 105;

B.      For a judgment on the Second Claim for Relief in Papilion and Weaver's favor and against Defendant Wells Fargo Bank:

       a.      Finding that Wells Fargo Bank has violated C.R.S. §38-35-124;

       b.      Ordering Wells Fargo Bank to execute the documents necessary to release the 2002 Wells Fargo Bank Deed of Trust;

       c.      Entering an award for damages in an amount to be proven at trial incurred by Papilion and Weaver as a result of Wells Fargo Bank's violation of C.R.S. §38-35-124;

C.      For a judgment on the Third Claim for Relief in Papilion and Weaver's favor and against Defendant Wells Fargo Bank finding that Wells Fargo Bank has violated C.R.S. §38-35-109 and entering an award for damages in an amount to be proven at trial incurred by Papilion and Weaver as a result of Wells Fargo Bank's violation of C.R.S. §38-35-109;

D.      For such other relief as the Court may deem proper.

Respectfully submitted this 8th day of August, 2013.

LOWE, FELL & SKOGG, LLC


*s/ Karen L. Brody*
Kenneth K. Skogg, #17153
Karen L. Brody, #27215
1099 Eighteenth Street, Suite 2950
Denver, Colorado 80202
Telephone:  (720) 359-8200

ATTORNEYS FOR PLAINTIFFS
ELIZABETH S. WEAVER AND
JOHN D. PAPILION

*A duly signed physical copy of this document is on file at the office of Lowe, Fell & Skogg, LLC pursuant to CRCP Rule 121, Section 1-26(7).*

Addresses of Plaintiffs:

5700 South Cherry Circle
Greenwood Village, Colorado 80121

25—

```
B2027666
2/11/2002 14:55:31
   PG: 0001-005
25.00 DOC FEE:      0.00
TRACY K. BAKER
ARAPAHOE COUNTY
```



DATE FILED: August 8, 2013 2:30 PM

——— State of Colorado ———                   ——— Space Above This Line For Recording Data ———

4517034377                    **DEED OF TRUST**
                             (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is 1/29/2002 and the parties, their addresses and tax identification numbers, if required, are as follows:

   GRANTOR: Eric M Dale, And
            Diane M Dale
            5700 S Cherry Circle, Littleton, CO 80121

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and acknowledgments.

   TRUSTEE: Arapahoe

   LENDER: Wells Fargo Bank West, N.A.

           4455 ArrowsWest Drive, P.O. Box 49069
           Colorado Springs, CO  80949-9069

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:

   See attached Exhibit A, Line Rider      Tax ID #2075-18-4-08-006

   The property is located in Arapahoe _____ at 5700 S Cherry Circle _____
                                              (County)
   _____ . Littleton _____ , Colorado 80121 _____
            (Address)                    (City)                  (ZIP Code)

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 1,000,000.00 _____ . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(You must specifically identify the debt(s) secured and include the final maturity date of such debt(s).)*
   One Million And 0/100,  2/20/2012

**COLORADO - HOME EQUITY LINE OF CREDIT DEED OF TRUST** (NOT FOR FNMA, FHLMC, FHA OR VA USE)
© 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CO 10/23/98                                                    (page 1 of 4)
LMP -C465(CO) (9901)                              VMP MORTGAGE FORMS - (800)521-7291

AL033249




# Exhibit A

**EXHIBIT A**

LOT 13, BLOCK 2, THE PRESERVE AT GREENWOOD VILLAGE FILING NO. 4, COUNTY OF
ARAPAHOE, STATE OF COLORADO.



B.  All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender executed after this Security Instrument whether or not this Security Instrument is specifically referenced or such future advances or future obligations are incurred for any purpose that was related or unrelated to the purpose of the Security Instrument. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C.  All other obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

D.  All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

In the event that Lender fails to provide any necessary notice of the right of rescission with respect to any additional indebtedness secured under paragraph B of this Section, Lender waives any subsequent security interest in the Grantor's principal dwelling that is created by this Security Instrument (but does not waive the security interest for the debts referenced in paragraph A of this Section).

5.  **DEED OF TRUST COVENANTS.** Grantor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Grantor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Grantor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees to make all payments when due and to perform or comply with all covenants. Grantor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

**Authority to Perform.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the

© 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CO 10/23/98
C465(CO) (8909)





Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

6. **WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey, and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

8. **DEFAULT.** Grantor will be in default if any of the following occur:

   **Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

   **Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

   **Property.** Any action or inaction by the Borrower or Grantor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Grantor fails to maintain required insurance on the Property; (b) Grantor transfers the Property; (c) Grantor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Grantor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Grantor dies; (f) if more than one Grantor, any Grantor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Grantor and subjects Grantor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

   **Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and Grantor becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9. **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default. In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

   At the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. Lender shall be entitled to, without limitation, the power to sell the Property or foreclose on installments without acceleration.

   If there is a default, Trustee shall, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale. Upon sale of the property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

   The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Grantor breaches any covenant in this Security Instrument, Grantor agrees to pay all expenses Lender incurs in performing such covenants or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, reasonable attorneys' fees as permitted by applicable law. To the extent permitted by the United States Bankruptcy Code, Grantor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.) and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

   Grantor represents, warrants and agrees that:

   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

   B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

© 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CO 10/23/98

-C465(CO) (9901)





C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

14. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

15. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

16. **WAIVERS.** Except to the extent prohibited by law, Grantor waives all rights of appraisement, homestead exemption and marshalling of liens and assets in the Property.

17. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

18. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

19. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.
[Check all applicable boxes]

☐ Assignment of Leases and Rents    ☒ Other **Home Equity Line Rider** ..................................

20. ☐ **ADDITIONAL TERMS.**

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

(Signature) Eric M Dale          2/1/02    (Signature) Diane M Dale          2/1/02
                    (Date)                                    (Date)

**ACKNOWLEDGMENT:**
(Individual)       STATE OF CO                          , COUNTY OF Arapahoe                    }ss.
The foregoing instrument was acknowledged before me this   1st   day of   February   2002
by Eric M Dale, Diane M Dale
My commission expires:
                    (Seal)                                    (Notary Public)

© 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-CO 6/17/99

C465(CO) (9901)

BRENDA L. McINTOSH
NOTARY PUBLIC
STATE OF COLORADO
My Commission Expires Sept. 20, 2005

*(page 4 of 4)*